# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT GREENEVILLE

| | |
|---|---|
| **HOLSTON UNITED METHODIST HOME FOR CHILDREN,** *Plaintiff,* <br><br> v. <br><br> **XAVIER BECERRA**, in his official capacity as Secretary of the United States Department of Health and Human Services; the **UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES**; **JOOYEUN CHANG**, in her official capacity as Principal Deputy Assistant Secretary of Administration for Children and Families at the United States Department of Health and Human Services; **ADMINISTRATION FOR CHILDREN AND FAMILIES AT THE UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES**; <br><br> *Defendants.* | **COMPLAINT** <br><br><br> CASE NO. <u>2:21-CV-00185</u> |

## INTRODUCTION

1.  Plaintiff Holston United Methodist Home for Children ("Holston Home") brings this case to challenge a regulation of the United States Department of Health and Human Services ("HHS"), at 45 C.F.R. § 75.300(c)–(d), that prohibits discrimination in programs funded by HHS grants, and by recipients and sub-recipients of those funds, on the basis of religion, sex, sexual orientation, gender identity, and same-sex marriage status.

1

2.     Because the rule exceeds HHS's statutory jurisdiction, authority, and limitations, is not in accordance with law, is arbitrary, capricious, and an abuse of discretion, is contrary to constitutional right, and violates Holston Home's right to free exercise of religion under the First Amendment to the U.S. Constitution and the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. §§ 2000bb-2000bb-4, and freedom of speech and association under the First Amendment, it should be preliminarily and permanently enjoined, held unlawful, and set aside under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 705–06 and this Court's equitable powers, see *Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682 (1949).

## JURISDICTION & VENUE

3.     This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the U.S. Constitution and federal law.

4.     This Court also has jurisdiction under 28 U.S.C. § 1346(a) because this is a civil action against the United States.

5.     Additionally, this Court has jurisdiction under 28 U.S.C. § 1361 to compel an officer of the United States or any federal agency to perform his or her duty.

6.     This Court has jurisdiction to review Defendants' unlawful actions and enter appropriate relief under the APA, 5 U.S.C. §§ 553, 701–706.

7. This Court has inherent jurisdiction to review and enjoin ultra vires or unconstitutional agency action through an equitable cause of action. *Larson*, 337 U.S. at 689–701 (1949).

8. This case seeks declaratory and other appropriate relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, 5 U.S.C. §§ 705–706, Federal Rule of Civil Procedure 57, and the Court's inherent equitable powers.

9. This Court may award costs and attorneys' fees under 42 U.S.C. § 1988(b), and the Equal Access to Justice Act, 28 U.S.C. § 2412.

10. Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this district and this division, and a substantial part of property that is the subject of the action is situated here, because this district is where Plaintiff Holston United Methodist Home for Children is situated and is regulated by Defendants' actions. Defendants are United States agencies or officers sued in their official capacities. A substantial part of the events or omissions giving rise to the Complaint occur within this district and division.

## PARTIES

11. Plaintiff Holston United Methodist Home for Children is a religious not-for-profit corporation duly incorporated under the laws of Tennessee, with its principal place of business at 404 Holston Drive, Greenville, TN 37743.

12. Defendant Xavier Becerra is the Secretary of the U.S. Department of Health and Human Services. Defendant Becerra is sued in his official capacity.

3

Defendant Becerra is responsible for the overall operations of HHS, including the Department's administration of funds received by Holston Home through the Title-IV-E Foster Care and Adoption Program of the Social Security Act, operated by the Administration of Children and Families at HHS. His HHS address is 200 Independence Ave SW, Washington, DC 20201.

13.     Defendant U.S. Department of Health and Human Services (HHS) is a federal cabinet agency within the executive branch of the U.S. government and is an agency under 5 U.S.C. § 551 and 701(b)(1). Its address is 200 Independence Ave SW, Washington, DC 20201.

14.     Defendant JooYeun Chang is the principal deputy assistant secretary at the Administration for Children and Families at HHS, and has the delegable duties as the assistant secretary of the agency, including the Department's administration of funds received by Holston Home through the Title-IV-E Foster Care and Adoption Program of the Social Security Act, operated by the Administration of Children and Families at HHS. Her ACF address is 330 C Street SW, Washington, DC 20201.

15.     Defendant Administration for Children and Families (ACF) at HHS is a federal agency within the executive branch of the U.S. government, is an operating division of HHS, and is an agency under 5 U.S.C. § 551 and 701(b)(1). Its address is 330 C Street SW, Washington, DC 20201.

## FACTUAL ALLEGATIONS

### I. Holston United Methodist Home for Children

16.    The care of orphans and infants whose parents cannot care for them has been a mission of Christians since the beginning of the faith.

17.    Holston Home was founded in 1895 when Mrs. E.E. Wiley, a widow, took in her first homeless child.

18.    Since then, Holston has helped more than 8,000 children.

19.    Holston Home is affiliated with the Holston Conference of the United Methodist Church.

20.    Holston Home is situated on 155 acres of hillside in Greeneville, Tennessee and includes service locations in Greenville, Knoxville, Chattanooga, Tennessee, and Bristol, Virginia.

21.    Holston Home employs approximately 170 people.

22.    Holston Home's board is composed of believers who are actively involved in their churches, including two Reverends and a Bishop.

23.    Holston Home's goal is always to do what is best for the children whether it's reuniting with family, adoption, or successfully transitioning to adulthood. Their professional staff works to strengthen families and help children overcome any emotional traumas or other hardships they may have experienced.

24.    Holston Home and similarly situated faith-based agencies greatly expand the number of households that participate in the foster care and adoption program.

25.    Holston Home's religious beliefs motivate and permeate its mission and all of its activities.

5

26.     Holston Home exercises its religious beliefs by providing hope and healing for a brighter future by sharing the love of Jesus with children and families struggling with life's challenges, and by pursuing the vision that children be raised by healthier families that prepare them to live the fulfilling adult lives that God intended for them.

27.     Holston Home exercises its religious beliefs by engaging in child placing activities in connection with prospective foster care or adoptive parents who will affirm Christian statement of faith and beliefs that Holston Home has adopted consistent with its beliefs.

28.     It would substantially burden Holston Home's exercise of its religious beliefs to knowingly engage in child placing activities in connection with persons that do not agree with its Christian statement of faith and beliefs.

29.     Holston Home exercises its religious beliefs by declining to engage in child placing activities in connection with prospective foster care or adoptive parents who may be romantically cohabitating but are not married, or who are couples of the same biological sex.

30.     It would substantially burden Holston Home's exercise of its religious beliefs to knowingly engage in child placing activities in connection with couples who may be romantically cohabitating but not married, or who are couples of the same biological sex.

31.     In engaging in child placing activities, Holston Home engages in speech.

32. In these child placing activities, Holston Home speaks multiple value-laden messages about marriage and family in counseling and interaction with birth parents, prospective foster care and adoption parents, and the state.

33. These messages by Holston Home concern the best interests of children and the suitability of the homes and relationships of prospective parents for the care and upbringing of children.

34. The messages Holston Home recites in its child placing activities are consistent with Holston Home's religious beliefs about cohabitation, and about marriage being between a biological male and a biological female.

35. The messages Holston Home recites in its child placing activities are consistent with Holston Home's mission of sharing the love of Jesus with children and families and helping children be raised by healthier families that prepare them to live the fulfilling adult lives that God intended for them.

36. If Holston Home were to knowingly engage in child placing activities concerning placements of children in connection with couples who may be romantically cohabitating but are not married, or who are couples of the same biological sex, it would need to engage in speech with which Holston Home disagrees and which violate Holston Home's religious beliefs.

37. If Holston Home were to knowingly engage in child placing activities concerning placements of children with couples that do not share its statement of faith, it would need to engage in speech that falls outside of Holston Home's chosen mission.

7

**II. The 2016 Grants Rule**

38.    Federal funding for foster care is provided through Title IV-E of the Social Security Act, which is codified at 42 U.S.C. §§ 670–679c. Title IV-E provides grants to States for foster care, transitional independent living programs, adoption assistance, and kinship guardianship assistance, among other things. 42 U.S.C. § 670.

39.    Title IV-E operates through the conditional grant of federal funds. *South Dakota v. Dole*, 483 U.S. 203, 207 (1987).

40.    HHS, and ACF within HHS, administer Title IV-E at the federal level.

41.    Title IV-E contains an express anti-discrimination provision. It requires state plans to prohibit discrimination on the basis of "race, color, or national origin." 42 U.S.C. § 671(a).

42.    Title IV-E does not prohibit discrimination on the basis of sex, religion, sexual orientation, gender identity, or same-sex marriage status.

43.    No other federal statute prohibits discrimination in Title IV-E foster care or adoption program, or among recipients or sub-recipients of such funds, on the basis of religion, sex, sexual orientation, gender identity, or same-sex marriage status.

44.    45 C.F.R. § 75.300(c) and (d) were published in a final rule on December 12, 2016, and became effective on January 11, 2017. Health and Human Services Grants Regulation, 81 Fed. Reg. 89,393 (Jan. 11, 2017).

45.    45 C.F.R. § 75.300(c) states:

8

It is a public policy requirement of HHS that no person otherwise eligible will be excluded from participation in, denied the benefits of, or subjected to discrimination in the administration of HHS programs and services based on non-merit factors such as age, disability, sex, race, color, national origin, religion, gender identity, or sexual orientation. Recipients must comply with this public policy requirement in the administration of programs supported by HHS awards.

46.     45 C.F.R. § 75.300(d) states:

In accordance with the Supreme Court decisions in *United States v. Windsor* and in *Obergefell v. Hodges*, all recipients must treat as valid the marriages of same-sex couples. This does not apply to registered domestic partnerships, civil unions or similar formal relationships recognized under state law as something other than a marriage.

47.     Neither *United States v. Windsor* nor *Obergefell v. Hodges* require HHS or to impose 45 C.F.R. § 75.300(c) or (d) to prohibit discrimination on the basis of sex, sexual orientation, gender identity, or same-sex marriage status.

48.     Hereinafter, the provisions of 45 C.F.R. § 75.300(c) and (d) prohibiting discrimination on the basis of religion, sex, sexual orientation, gender identity, or same-sex marriage status within the Title IV-E foster care or adoption program, or among recipients or sub-recipients of such funds, is referred to as "the 2016 Grants Rule."

49.     HHS claimed its changes in the 2016 Grants Rule were "based on existing law or HHS policy" but acknowledged they "were not previously codified in regulation." 81 Fed. Reg. 45,270.

50.     HHS cited no statutory source for authority to impose the 2016 Grants Rule other than 5 U.S.C. § 301, which contains no reference to nondiscrimination. *See* 81 Fed. Reg. 89,395.

9

51.     The Supreme Court has called section 301 a "housekeeping statute" that simply allows agencies "to regulate [their] own affairs." *Chrysler Corp. v. Brown*, 441 U.S. 281, 309 (1979).

52.     The Housekeeping Statute is not a statute that HHS is charged with administering. *See Metro. Stevedore Co. v. Rambo*, 521 U.S. 121, 137 n.9 (1997).

53.     To the extent that 45 C.F.R. § 75.300(c) and (d) prohibit discrimination that is prohibited by an actual statute, they are wholly duplicative of 45 C.F.R. § 75.300(a) and (b), which already require federally funded programs to operate in accordance with "U.S. statutory" requirements.

54.     Consequently, all provisions of 45 C.F.R. § 75.300(c) and (d) either lack statutory authority, or are superfluous.

55.     HHS gave no rationale why 45 C.F.R. § 75.300(c) and (d) needed to prohibit discrimination that is already prohibited by "U.S. statutory" requirements imposed under 45 C.F.R. § 75.300(a) and (b).

56.     The 2016 Grants Rule applies to all "grant agreements and cooperative agreements" unless the program is specifically exempted. 45 C.F.R. § 75.101.

57.     According to HHS, the provisions of the 2016 Grants Rule flow down to subawards.

58.     HHS chose not to apply the 2016 Grants Rule to the Temporary Assistance for Needy Families Program under the title IV-A of the Social Security Act. 45 C.F.R. § 75.101(f). 81 Fed. Reg. at 89,395.

59. HHS professed a belief that the changes in the 2016 Grants Rule were "non-controversial." 81 Fed. Reg. 45,271.

60. Some comments on the 2016 Grants Rule raised the issue of entities that have policies that withhold services on the basis of religious or moral objections.

61. HHS made no mention in the 2016 Grants Rule of the effects of the rule change on religious organizations, or their rights under the Religious Freedom Restoration Act.

62. The 2016 Grants Rule does not specifically exempt entities on the basis of their rights under the Religious Freedom Restoration Act or the First Amendment.

63. However, the 2016 Grants Rule is subject to a general discretionary provision that authorizes the Department to grant "[e]xceptions on a case-by-case basis for individual non-Federal entities," 45 C.F.R. § 75.102(b), or authorizes the Office of Management and Budget to grant program-wide exemptions, 45 C.F.R. § 75.102(a).

### III. The 2016 Grants Rule's effect on Holston Home

64. The 2016 Grants Rule is in effect.

65. Holston Home receives Title IV-E funds through the State of Tennessee.

66. Defendants administer the Title IV-E funds to the State of Tennessee.

67. Holston Home relies on the receipt of funds from the Title IV-E foster care and adoption program to sustain its child placing activities.

11

68. The 2016 Grants Rule prohibits Holston Home, as a condition of receiving Title IV-E funds, from discriminating on the basis of religion, sex, sexual orientation, gender identity, or same-sex marriage status.

69. The 2016 Grants Rule prohibits Holston Home, as a condition of receiving Title IV-E funds, from limiting its child placing activities to working with couples who will agree with its statement of faith.

70. The 2016 Grants Rule prohibits Holston Home, as a condition of receiving Title IV-E funds, from declining to knowingly engage in child placing activities in connection with couples who are of the same biological sex, persons who may be romantically cohabitating but not married, or persons who reject Holston Home's statement of faith concerning their Biblical views on marriage or sexuality.

71. Defendants' regulations and written policies governing the Title IV-E foster care and adoption program, and the terms and conditions of their written agreements with the State of Tennessee for participation in that program, preclude Holston Home participating in the program if Holston Home does not comply with the requirements in the 2016 Grants Rule.

72. Apart from the 2016 Grants Rule, Holston Home is not otherwise legally prohibited from exercising its religious beliefs by limiting its child placing activities to persons who share its statement of faith, and declining to knowingly engage in those activities in connection with couples who may be romantically cohabitating but are not married, or who are couples of the same biological sex.

12

73.    On November 18, 2021, Defendants declared no religious exemptions to the 2016 Grants Rule under RFRA would continue for faith-based child placing agencies across the country. *See* Press Release, U.S. Department of Health and Human Services, HHS Takes Action to Prevent Discrimination and Strengthen Civil Rights (Nov. 18, 2021), available at https://www.hhs.gov/about/news/2021/11/18/hhs-takes-action-to-prevent-discrimination-and-strengthen-civil-rights.html; Letter from JooYeun Chang, Principal Deputy Assistant Secretary, Administration for Children and Families, to Gov. Henry McMaster, Governor of the State of South Carolina  (Nov. 18, 2021), available at https://www.acf.hhs.gov/sites/default/files/documents/withdrawal-of-exception-from-part-75.300-south-carolina-11-18-2021.pdf.

74.    Defendants withdrew those RFRA exemptions even as they encompassed specific child placing agencies, such as Miracle Hill in South Carolina and St. Vincent Catholic Charities in Michigan, that had informed HHS that they needed an exemption under RFRA as it pertained to their specific circumstances of only engaging in child placing activities with couples who share their statement of faith, or of declining to engage in child placing activities for placements with same-sex couples.

75.    At any moment, Defendants could enforce the 2016 Grants Rule to require the State of Tennessee to exclude Holston Home from the Title IV-E foster care and adoption program.

76. Defendants' unilateral and nationwide withdrawal of all RFRA exemptions to similar faith-based child placing agencies on November 18, 2021, demonstrates a likelihood that Defendants will imminently enforce the 2016 Grants Rule to exclude Holston Home from the State of Tennessee's Title IV-E foster care and adoption program.

77. The 2016 Grants Rule requires Holston Home to choose between three untenable options: violate its religious beliefs and its chosen religious exercise and continue to receive funding under the program; adhere to its religious beliefs and exercise and lose funding and qualification for the Title IV-E program; or exit adoption and foster care fields in violation of its religious beliefs and exercise.

78. The 2016 Grants Rule will drive religious organizations out of adoption and foster care services and dissuade them from entering, leading to fewer placements of children with fostering and adoption homes, and therefore significant harms to children.

79. The Supreme Court has recently recognized the harms that may come to children from expelling faith-based agencies from foster care and adoption programs. *Fulton v. City of Philadelphia*, 141 S. Ct. 1868 (U.S. June 17, 2021).

80. Many other agencies in the State of Tennessee are willing to engage in child placing activities with couples with whom Holston Home does not work.

81. Elimination of the 2016 Grants Rule as unlawful, or recognizing religious exemptions to it, will not prevent any child from being placed in his or

14

her forever home, nor will it prevent any couple qualified by a state to foster or adopt from being able to work with an agency receiving Title IV-E funds.

82.    If the 2016 Grants Rule is enjoined, Holston Home will continue to receive Title IV-E foster care and adoption program funds without needing to violate its religious beliefs.

**IV. Defendant's actions are subject to judicial review**

83.    The APA allows a person "suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action" to seek judicial review of that action. 5 U.S.C. § 702.

84.    An "agency action" includes "the whole or a part of an agency rule." 5 U.S.C. § 701(2); § 551(13).

85.    The 2016 Grants Rule, 45 C.F.R. § 75.300(c) and (d), finalized at 81 Fed. Reg. 89,393 is "the whole or a part of an agency rule."

86.    That rule is a final agency action subject to challenge under the APA.

87.    Plaintiff suffers legal wrong from the 2016 Grants Rule because it unlawfully changes Holston Home's rights as a sub-recipient participant in the Title IV-E foster care and adoption program.

88.    Plaintiff suffers adverse effects from the 2016 Grants Rule because it disqualifies Holston Home from receiving funding from or participating in that program.

89.    Holston Home faces a credible threat of enforcement of the 2016 Grants Rule.

15

90. Defendants are government agencies and officials under 42 U.S.C. § 2000bb-2.

91. Holston Home has no adequate remedy at law.

92. Absent injunctive and declaratory relief, Holston Home has been and will continue to be harmed.

93. All the acts of the Defendants described above, and their officers, agents, employees, and servants, were executed and are continuing to be executed by Defendants under the color and pretense of the policies, statutes, ordinances, regulations, customs, and usages of the United States.

94. The 2016 Grants Rule is definitive and determines the rights of persons; Defendants have declared the rule to be treated as if it has the full force of law; and Defendants have done so.

95. Under 5 U.S.C. § 701(a), no statute precludes judicial review of 2016 Grants Rule, and it is not committed to agency discretion by law.

## CLAIM I: ADMINISTRATIVE PROCEDURE ACT
## 5 U.S.C. § 706

96. Holston Home repeats and re-alleges each allegation contained in paragraphs 1–94 of this Complaint as if fully set forth here.

97. The 2016 Grants Rule (that is, the prohibition on discrimination on the basis of religion, sex, sexual orientation, gender identity, or same-sex marriage status, by recipients of HHS grants, or in programs funded by HHS grants) is "not in accordance with law" and "in excess of statutory jurisdiction, authority, or limitations" under 5 U.S.C. § 706.

16

98. HHS lacked statutory authority to impose the 2016 Grants Rule.

99. Congress has not delegated to the Defendants the authority to impose the 2016 Grants Rule.

100. 5 U.S.C. § 301 does not provide statutory authority to impose the 2016 Grants Rule.

101. No other statute provides statutory authority to impose the 2016 Grants Rule.

102. Title IX of the Education Amendments of 1972 does not apply to Holston Home's receipt of funds under Title IV-E of the Social Security Act.

103. No statute prohibits discrimination on the basis of religion, sex, sexual orientation, gender identity, or same-sex marriage status, in the use of funds under the foster care and adoption program of Title IV-E of the Social Security Act.

104. *United States v. Windsor* and in *Obergefell v. Hodges* neither require nor authorize imposition of 45 C.F.R. § 75.300(d).

105. For reasons discussed below, the 2016 Grants Rule violates Holston Home's rights under the Religious Freedom Restoration Act.

106. The 2016 Grants Rule is arbitrary, capricious, and an abuse of discretion under 5 U.S.C. § 706.

107. The 2016 Grants Rule relied on 5 U.S.C. § 301 as its only statutory authority, and that statute did not support its changes.

108. The 2016 Grants Rule declared itself to be uncontroversial.

17

109. The 2016 Grants Rule failed to consider its impact on religious exercise under the First Amendment or the Religious Freedom Restoration Act.

110. The 2016 Grants Rule failed to address comments that stated agencies have policies that withhold services on the basis of religious or moral objections.

111. Defendants knew, at the time of the 2016 Grants Rule, that faith based agencies have such policies, but did not address that issue in the rulemaking.

112. Defendants failed to consider alternative policies.

113. All provisions of 45 C.F.R. § 75.300(c) either lack statutory authority, or are superfluous of the "U.S. statutory" nondiscrimination requirements imposed through 45 C.F.R. § 75.300(a) and (b).

114. The 2016 Grants Rule gave no rationale why it needed to impose 45 C.F.R. § 75.300(c) and (d) to the extent it reiterates nondiscrimination categories that are already imposed through 45 C.F.R. § 75.300(a) and (b).

115. The 2016 Grants Rule is contrary to constitutional right.

116. For reasons discussed below, the 2016 Grants Rule is not neutral or generally applicable, it burdens the religious exercise of Holston Home, and it is not a narrowly tailored method of pursuing a compelling government interest under the Free Exercise Clause of the First Amendment of the U.S. Constitution.

117. Under the APA, a reviewing Court must "hold unlawful and set aside agency action" if it violates the APA in any of these ways. 5 U.S.C. § 706.

118. Under the APA, the court may issue injunctive relief to prevent Defendants from imposing the 2016 Grants Rule pending review of this case. 5 U.S.C. § 705.

119. Therefore the court should enjoin, hold unlawful, and set aside 45 C.F.R. § 75.300(c) and (d) under the APA.

## CLAIM II: RELIGIOUS FREEDOM RESTORATION ACT
### 42 U.S.C. § 2000bb-1

120. Holston Home repeats and re-alleges each allegation contained in paragraphs 1–94 of this Complaint as if fully set forth here.

121. The Religious Freedom Restoration Act, 42 U.S.C. § 2000bb through 2000bb-4, provides that the government may not substantially burden Holston Home's exercise of religion unless it does so as the least restrictive means of advancing a compelling government interest.

122. Defendants are the government under RFRA.

123. Holston Home is a religious organization that can and does exercise religion in its provision of information and services.

124. Holston Home has sincerely held religious beliefs that motivate it to knowingly provide child placing activities only in connection with persons who share their statement of faith.

125. Holston Home has sincerely held religious beliefs that motivate it to operate its ministry by declining to knowingly engage in child placing activities only in connection with couples who may be romantically cohabitating but are not married, or who are couples of the same biological sex.

19

126. Holston Home has sincerely held religious beliefs that motivate and require it to care for orphans and other children whose parents cannot care for them.

127. Holston Home's provision of child placing services in these ways is an exercise of religion.

128. The 2016 Grants Rule disqualifies Holston Home from Title IV-E foster care and adoption program funding, and from participating in that program, if it engages in its exercises of religion as discussed above.

129. The 2016 Grants Rule discriminates on the basis of religion against Holston Home and similarly situated entities.

130. The 2016 Grants Rule imposes a substantial burden on the religious exercise of Holston Home.

131. The 2016 Grants Rule imposes substantial pressure on Holston Home to change or violate its beliefs in order to receive funds.

132. Defendants have no compelling, significant, or even valid interest to impose this burden on Holston Home's religious exercise.

133. The lack of statutory authority for the 2016 Grants Rule shows that Congress intends funds to be provided without the conditions of the 2016 Grants Rule, and therefore precludes Defendants from claiming there is a compelling interest to impose the rule against Holston Home.

134. The 2016 Grants Rule leave substantial portions of Defendants' purported government interests unprotected.

135. The 2016 Grants Rule, if left in place, significantly undermines the government's interest in finding forever homes for children.

136. The availability of discretionary exemptions to the 2016 Grants Rule under 45 C.F.R. § 75.102, and its exemption of the TANF program, preclude the existence of a compelling government interest to impose the rule on Holston Home.

137. Defendants have alternative, less restrictive means to achieve any of its purported interests rather than substantially burdening the religious exercise of Holston Home.

138. Defendants' past acknowledgements of religious exemptions from the 2016 Grants Rule for child placing agencies show that it has a less restrictive means of pursuing its interests without burdening the religious exercise of Holston Home.

139. The 2016 Grants Rule evinces hostility to Holston Home because of its religious beliefs and practices.

140. The 2016 Grants Rule was targeted to exclude Holston Home and similarly situated religious adoption and foster care providers.

141. The 2016 Grants Rule permits federal officials to arbitrarily decide what religious exercise is permitted and not permitted.

142. Defendants' November 18, 2021 withdrawal of all recognition of religious exemptions to the 2016 Grants Rule demonstrates that they are violating Holston Home's rights under RFRA.

143. Accordingly, 2016 Grants Rule violates Holston Home's rights under RFRA.

144.   RFRA allows Holston Home to assert its claim against the 2016 Grants Rule and to obtain judicial relief, including an injunction.

145.   The Court should therefore enjoin Defendants from applying the 2016 Grants Rule to Holston Home.

## CLAIM III: FIRST AMENDMENT OF THE U.S. CONSTITUTION FREE EXERCISE CLAUSE

146.   Holston Home repeats and re-alleges each allegation contained in paragraphs 1–94 of this Complaint as if fully set forth here.

147.   The Free Exercise Clause of the First Amendment to the United States Constitution protects Holston Home's rights to exercise its religious beliefs even when burdened by Defendants.

148.   The Free Exercise Clause prevents Defendants from excluding Holston Home from a public benefit based on its exercise of religious beliefs.

149.   The Free Exercise Clause requires that Defendants satisfy strict scrutiny to apply the 2016 Grants Rule to Holston Home if the rule is not neutral and generally applicable.

150.   Holston Home is a religious organization that can and does exercise religion in its provision of information and services.

151.   Holston Home has sincerely held religious beliefs that motivate it to provide child placing activities only in connection with persons who share their statement of faith.

152.   Holston Home has sincerely held religious beliefs that motivate it to operate its ministry by declining to knowingly engage in child placing activities in connection with couples who may be romantically cohabitating but are not married, or who are couples of the same biological sex.

153.   Holston Home has sincerely held religious beliefs that motivate and require it to care for orphans and other children whose parents cannot care for them.

154.   Holston Home's provision of child placing services in these ways is an exercise of religion.

155.   The 2016 Grants Rule disqualifies Holston Home from Title IV-E foster care and adoption program funding, and from participating in that program, if it engages in its exercises of religion as described above.

156.   The 2016 Grants Rule imposes a burden on the religious exercise of Holston Home.

157.   The 2016 Grants Rule imposes substantial pressure on Holston Home to change or violate its beliefs in order to receive funds.

158.   The 2016 Grants Rule is not neutral or generally applicable.

159.   The following, among other reasons, demonstrates that the 2016 Grants Rule is not neutral or generally applicable, that it leaves substantial portions of Defendants' purported government interests unprotected, and that any purported government interests can be achieved by alternative, less restrictive means than burdening the religious exercise of Holston Home:

23

a. The availability of discretionary exemptions to the 2016 Grants Rule under 45 C.F.R. § 75.102;

b. The 2016 Grants Rule's exclusion of its application to the TANF program of Title IV-E;

c. Defendants' past acknowledgements of religious exemptions from the 2016 Grants Rule for child placing agencies; and

d. The lack of statutory authority that Congress provided to impose the 2016 Grants Rule on the Title IV-E foster care and adoption program.

160. Defendants have no compelling, significant, or valid interest to impose its burdens on Holston Home's religious exercise.

161. The 2016 Grants Rule, if left in place, significantly undermines the government's interest in finding forever homes for children.

162. The 2016 Grants Rule evinces hostility to Holston Home because of its religious beliefs and practices.

163. The 2016 Grants Rule discriminates on the basis of religion against Holston Home and similarly situated entities.

164. The 2016 Grants Rule was targeted to exclude Holston Home and similarly situated religious adoption and foster care providers.

165. The 2016 Grants Rule permits federal officials to arbitrarily decide what religious exercise is permitted and not permitted.

166.  Defendants' November 18, 2021 withdrawal of all recognition of religious exemptions to the 2016 Grants Rule demonstrates that they are violating Holston Home's rights under the Free Exercise Clause.

167.  Forcing Holston Home to place children with non-Christian, same-sex couples, or unmarried couples, in violation of its religious beliefs, does not serve any purported government interest in a narrowly tailored way.

168.  The 2016 Grants Rule is underinclusive as it allows the Defendants to provide exemptions to other provisions of HHS's grants rules and conditions.

169.   Accordingly, 2016 Grants Rule violates the First Amendment right to free exercise of religion.

170.  The Court should therefore enjoin application of the 2016 Grants Rule to Holston Home under the Free Exercise Clause of the First Amendment and *Larson,* 337 U.S. 682.

## CLAIM IV: FIRST AMENDMENT OF THE U.S. CONSTITUTION
## FREE SPEECH CLAUSE AND UNCONSTITUTIONAL CONDITIONS

171.  Holston Home repeats and re-alleges each allegation contained in paragraphs 1–94 of this Complaint as if fully set forth here.

172.  The First Amendment prevents the government from compelling people to express, support, or promote a message not of their own choosing.

173.  By prohibiting Holston Home from participating in the Title IV-E foster care and adoption program or receiving federal funds thereunder because of Holston Home's choice not to engage in speech during its child placing activities in connection with couples who are cohabitating but not married, or who are couples of

25

the same biological sex, Defendants are violating Holston Home's protected right of free speech.

174. Including cohabiting or same-sex couples in Holston Home's evaluation, training, counseling and placement programs and foster- and adoptive-parent profiles would inevitably alter the messages concerning marriage, family, and the best interests of children that Holston Home desires to convey to adoptive families and birthparents, in violation of Holston Home's protected right of Free Speech.

175. Including persons that do not share Holston Home's statement of faith in Holston Home's child placing activities requires Holston Home to engage in speech outside of its chosen mission.

176. To require Holston Home to approve cohabiting or same-sex couples for foster care or adoption, or to approve specific child placements with such couples, would require Holston Home to represent to the State conclusions about the best interest of the child that Holston Home believes to be false and would preclude Holston Home from representing to the State the conclusions about the best interests of the child that it believes to be true, in violation of Holston Home's protected right of Free Speech.

177. By conditioning Holston Home's status as a recipient of Title IV-E foster care and adoption program funds, or its eligibility to participate in that program, on its willingness to surrender various constitutional rights, including the right to free speech and the right to free exercise of religion, Defendants have imposed and are

imposing an unconstitutional condition in violation of Holston Home's First Amendment rights.

178.   Defendants' 2016 Grants Rule, their incorporation of it in policies and documents governing the Title IV-E foster care and adoption program, and their enforcement thereof, impose an unconstitutional condition on Holston Home's right to free speech in its receipt of government benefits (e.g., avoiding disciplinary actions up to and including denial of funds and exclusion from the program).

179.   Defendants' 2016 Grants Rule and their enforcement thereof requires Holston Home to surrender its constitutionally protected rights to freedom of speech and free exercise of religion to avoid loss of funding and loss of eligibility for the Title IV-E foster care and adoption program.

180.   Defendants' burdening of speech and conditions as described herein are content-based, because they affect speech based on their content.

181.   Defendants' burdening of speech and conditions as described herein are viewpoint-based, because they disfavor some viewpoints over others.

182.   Defendants' actions as described herein are subject to strict scrutiny under the Free Speech Clause, including the unconstitutional conditions doctrine.

183.   Defendants' actions are not supported by a compelling interest, nor are they narrowly tailored to achieve such an interest.

184.   The Court should therefore enjoin application of the 2016 Grants Rule to Holston Home under the Free Speech Clause of the First Amendment and *Larson*.

## CLAIM V: FIRST AMENDMENT OF THE U.S. CONSTITUTION
## FREEDOM OF ASSOCIATION AND UNCONSTITUTIONAL CONDITIONS

185. Holston Home repeats and re-alleges each allegation contained in paragraphs 1–94 of this Complaint as if fully set forth here.

186. Holston Home is an expressive association comprising its board members, staff, volunteers, donors, and prospective and active foster care and adoptive parents.

187. Holston Home's participants associate together in part to convey its shared beliefs and values and to do so more effectively through its foster care and adoptive work.

188. If Holston Home began knowingly placing children with romantically cohabiting or same-sex couples, or persons who do not share its statement of faith, many Holston Home team members would no longer associate with Holston Home.

189. Without an injunction, Defendants' 2016 Grants Rule will likely disrupt Holston Home's ability to operate as an expressive association to communicate shared beliefs.

190. The First Amendment's freedom of speech and assembly clauses protect the right of persons to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends.

191. The First Amendment bars the government from compelling persons to expressively associate with others in the process of creating and disseminating speech.

192. The First Amendment protects Holston Home's right to speak, to freely associate, to be free not to speak, and to not associate.

193. To require Holston Home to engage in child placing activities in connection with romantically cohabiting or same-sex couples, or persons who do not share Holston Home's statement of faith, for foster care or adoption, would force Holston Home to engage in expressive association with persons in violation of Holston Home's First Amendment rights.

194. By conditioning Holston Home's status as a recipient of Title IV-E foster care and adoption program funds, or its eligibility to participate in that program, on its willingness to surrender its constitutional right to freedom of association, Defendants have imposed and are imposing an unconstitutional condition in violation of Holston Home's First Amendment rights.

## PRAYER FOR RELIEF

WHEREFORE, Holston Home respectfully requests that this Court enter judgment against Defendants, and provide Holston Home with the following relief:

1. That this Court declare unlawful, set aside, and vacate 45 C.F.R. § 75.300(c) & (d) as finalized at 81 Fed. Reg. 89,393 (Dec. 12, 2016);

2. That this Court render declaratory judgment that 45 C.F.R. § 75.300(c) and (d) and enforcement thereof, and any other agency actions imposing or enforcing a prohibition on discrimination on the basis of religion, sex, sexual orientation, or gender identity, to child placing agencies in the Title IV-E foster care or adoption program, violate the Administrative Procedure Act, and with respect to Holston

29

Home, violate the Religious Freedom Restoration Act, the Free Exercise Clause of the First Amendment, and the Free Speech and Assembly Clauses of the First Amendment;

3.     That this Court issue preliminary and permanent injunctive relief against enforcement of 45 C.F.R. § 75.300(c) and (d), or any other agency actions prohibiting discrimination on the basis of religion, sex, sexual orientation, or gender identity, on child placing agencies in the Title IV-E foster care or adoption program;

4.     That this Court adjudge, decree, and declare the rights and other legal relations of the parties to the subject matter here in controversy in order that such declarations shall have the force and effect of final judgment;

5.     That this Court retain jurisdiction of this matter for the purpose of enforcing this Court's order;

6.     That this Court grant to Holston Home reasonable costs and expenses of this action, including attorneys' fees in accordance with any applicable federal statute, including 42 U.S.C. § 1988 and 28 U.S.C. § 2412;

7.     That this Court grant the requested injunctive relief without a condition of bond or other security being required of Holston Home; and

8.     That this Court grant such other and further relief as this Court deems just and proper.

Respectfully submitted this 2nd day of December, 2021.

s/ Jonathan A. Scruggs
JONATHAN A. SCRUGGS
TN Bar No. 25679
ALLIANCE DEFENDING FREEDOM
15100 N 90th Street
Scottsdale, AZ 85260
Telephone: (480) 444-0020
Facsimile: (480) 444-0028
jscruggs@ADFlegal.org

Counsel for Plaintiff Holston Home

31