IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| HOLSTON UNITED METHODIST HOME FOR CHILDREN,<br><br>*Plaintiff*,<br><br>v.<br><br>**XAVIER BECERRA,** *et al.*,<br><br>*Defendants*. | No. 2:21-cv-00185 |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................ 1

ARGUMENT ............................................................................................................................. 1

    I.     Plaintiff Mischaracterizes the Notice of Nonenforcement and the Withdrawal Letters ........................................................................................ 1

    II.    Plaintiff Mischaracterizes Recent Events That Have No Effect on the Notice of Nonenforcement. ........................................................................... 6

    III.   The Continuing Violations Doctrine Does Not Apply to Plaintiff's RFRA Claim ........................................................................................................... 10

CONCLUSION ........................................................................................................................ 10

# TABLE OF AUTHORITIES

Cases

*Ailor v. City of Maynardville, Tennessee*,
   368 F.3d 587 (6th Cir. 2004)......................................................................................... 6

*Alexis Bailly Vineyard, Inc. v. Harrington*,
   931 F.3d 774 (8th Cir. 2019)........................................................................................... 3

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)........................................................................................................ 4

*Bryant v. Woodall*,
   1 F.4th 280 (4th Cir. 2021)............................................................................................. 3

*Care Comm. v. Arneson*,
   638 F.3d 621 (8th Cir. 2011)........................................................................................... 3

*Cowell v. Palmer Twp.*,
   263 F.3d 286 (3d Cir. 2001).......................................................................................... 10

*Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*,
   648 F.3d 365 (6th Cir. 2011)........................................................................................... 4

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*,
   546 U.S. 418 (2006)........................................................................................................ 5

*Green Party of Tenn. v. Hargett*,
   791 F.3d 684 (6th Cir. 2015)........................................................................................... 3

*Italian Colors Rest. v. Becerra*,
   878 F.3d 1165 (9th Cir. 2018)......................................................................................... 3

*LRL Properties v. Portage Metro Hous. Auth.*,
   55 F.3d 1097 (6th Cir. 1995)......................................................................................... 10

*Ocean Acres Ltd. v. Dare County Bd. of Health*,
   707 F.2d 103 (4th Cir. 1983)........................................................................................ 10

*Planned Parenthood Ass'n of Cincinnati, Inc. v. City of Cincinnati*,
   822 F.2d 1390 (6th Cir. 1987).....................................................................................3, 4

*Platt v. Bd. of Comm'rs on Grievances & Discipline of Ohio Sup. Ct.*,
   769 F.3d 447 (6th Cir. 2014)........................................................................................... 3

*Plunderbund Media, L.L.C. v. DeWine*,
   753 F. App'x 362 (6th Cir. 2018).................................................................................... 3

*Rodgers v. Bryant*,
   942 F.3d 451 (8th Cir. 2019)........................................................................................... 3

*Texas Dep't of Fam. & Protective Servs. v. Azar*,
  476 F. Supp. 3d 570 (S.D. Tex. 2020) ............................................................................... 2

*United States v. Martin*,
  438 F.3d 621 (6th Cir. 2006) ............................................................................................ 4

*Vita Nuova, Inc. v. Azar*,
  458 F. Supp. 3d 546 (N.D. Tex. 2020) .............................................................................. 2

Regulations

84 Fed. Reg. 63,809 (Nov. 19, 2019) ................................................................................ 1, 9

86 Fed. Reg. 7,023 (Jan. 20, 2021) ........................................................................................ 6

87 Fed. Reg. 37,189 (June 21, 2022) ..................................................................................... 7

**INTRODUCTION**

Plaintiff's response persistently misstates the meaning of the Notice of Nonenforcement and finds nonexistent connections to unrelated events. The Notice of Nonenforcement remains in place, ensuring that the 2016 Grants Rule will not be enforced pending the agency's consideration and promulgation of a new rule. *See* 84 Fed. Reg. 63,809, 63,811 (Nov. 19, 2019). Contrary to Plaintiff's claim, nothing about the government's motion to vacate the 2021 Grants Rule in separate litigation has any effect on the Notice of Nonenforcement. Plaintiff's attempts to minimize the Notice of Nonenforcement by alleging bad faith on the part of the United States Department of Health and Human Services ("HHS"), mischaracterizing the withdrawal of blanket exemptions to the 2016 Grants Rule, and speculating as to the meaning of recent Executive Orders likewise fail. In light of the Notice of Nonenforcement, which remains in effect, Plaintiff cannot establish that it has standing or that its claims are ripe.

Plaintiff also fails to establish that, given the Notice of Nonenforcement, there is any ongoing violation sufficient for Plaintiff's RFRA claim to survive the four-year statute of limitations.

Accordingly, the complaint should be dismissed in its entirety for lack of jurisdiction. Alternatively, Plaintiff's RFRA claim should be dismissed for failure to state a claim.

**ARGUMENT**

**I.  Plaintiff Mischaracterizes the Notice of Nonenforcement and the Withdrawal Letters.**

Contrary to Plaintiff's principal argument on pre-enforcement standing and ripeness, Pl.'s Opp. to Defs.' Mot. to Dismiss ("Opp.") 10–13; 15–17; 22–23, Defendants do not argue that the reason why Plaintiff lacks standing and why Plaintiff's claims are unripe is simply that no enforcement action has yet commenced. Rather, Plaintiff lacks standing and Plaintiff's claims are

unripe because HHS has officially given notice in the Federal Register that it will not enforce the 2016 Grants Rule. Indeed, Plaintiff concedes that it has not altered its conduct in response to the 2016 Grants Rule, to no consequence. *See* Opp. 16 (admitting that Plaintiff continues to "act[] contrary to the 2016 Grants Rule and intends to keep doing so"). Accordingly, Plaintiff's assertion that it must choose whether "to violate its religious beliefs, lose needed funding, or cease operations altogether," Opp. 1, is incorrect.

Moreover, Plaintiff's argument that it faces a credible threat of enforcement and substantial hardship suffers from legal and factual errors. First, Plaintiff incorrectly asserts that the Notice of Nonenforcement "is not a disavowal of enforcement" because "[o]nly an unchangeable disavowal of future enforcement, or a long history of disuse approaching desuetude" can overrule the substantial threat of enforcement. Opp. 19–20. But Defendants *have* provided a published disavowal of future enforcement and a total history of disuse. Further, Plaintiff presents no authority for the assertion that published disavowal of enforcement in the Federal Register is meaningless. Indeed, as discussed in Defendants' Memorandum in Support of Motion to Dismiss ("Mem."), ECF No. 21 at 8–9, the two district courts to have considered the Notice of Nonenforcement disagree with Plaintiff, *see Vita Nuova, Inc. v. Azar*, 458 F. Supp. 3d 546, 558 (N.D. Tex. 2020) ("Defendants have expressly disavowed enforcement of § 75.300(d)."); *Texas Dep't of Fam. & Protective Servs. v. Azar*, 476 F. Supp. 3d 570, 578 (S.D. Tex. 2020) ("In the nonenforcement notice, HHS unequivocally states that it will not enforce the challenged provisions pending repromulgation."). And Defendants have provided significant case law belying the assertion that a defendant must present "an unchangeable disavowal of future enforcement" for a Plaintiff to lack standing or for a case to be unripe. *See* Defs.' Mot. 7–9.

2

None of Plaintiff's cited cases are to the contrary. Many of Plaintiff's authorities involve no disavowal in any form, formal or otherwise. *See Green Party of Tenn. v. Hargett*, 791 F.3d 684 (6th Cir. 2015); *Platt v. Bd. of Comm'rs on Grievances & Discipline of Ohio Sup. Ct.*, 769 F.3d 447 (6th Cir. 2014); *281 Care Comm. v. Arneson*, 638 F.3d 621 (8th Cir. 2011); *Italian Colors Rest. v. Becerra*, 878 F.3d 1165, 1174 (9th Cir. 2018). Plaintiff's remaining authorities involve only informal expressions of current intent. *See Bryant v. Woodall*, 1 F.4th 280, 287–89 & n.1 (4th Cir. 2021), *as amended* (June 23, 2021) (holding the plaintiff had standing where one defendant sent an email stating he had "no present intentions" of enforcing the challenged law and one defendant wrote an editorial newspaper article advocating against use of the challenged law; and the remaining defendants had made "no representations at all"); *Rodgers v. Bryant*, 942 F.3d 451, 455 (8th Cir. 2019) (holding that "Arkansas['] claims that it would never enforce its anti-loitering law against 'polite' and 'courteous' beggars like [plaintiffs]" was insufficient to defeat standing); *Alexis Bailly Vineyard, Inc. v. Harrington*, 931 F.3d 774, 778 (8th Cir. 2019) (holding that plaintiff had standing despite defendant's argument that plaintiff could likely receive an exemption to the challenged policy).

Plaintiff's citation to *Plunderbund Media, L.L.C. v. DeWine*, 753 F. App'x 362 (6th Cir. 2018), only underscores Plaintiff's lack of standing and ripeness. There, the Sixth Circuit held that—like Plaintiff here—the plaintiff lacked standing based on "[t]he lack of a history or likelihood of enforcement combined with Defendants' stated intention not to enforce." *Id.* at 371–72. True, the Sixth Circuit acknowledged *Planned Parenthood Association of Cincinnati, Inc. v. City of Cincinnati* for the proposition that "even when prosecutors disavow enforcement of a law, plaintiffs may still sufficiently allege standing when the law is specifically targeted at the plaintiffs." *Id.* (citing *Planned Parenthood Ass'n of Cincinnati, Inc. v. City of Cincinnati*, 822 F.2d

3

1390, 1394–95 (6th Cir. 1987)). But the defendant in *Planned Parenthood* had disavowed enforcement of the law only by arguing that "any viable threat of prosecution under the [law] is removed by" an exclusionary provision contained in a separate permit application form. *Planned Parenthood Ass'n of Cincinnati, Inc.*, 822 F.2d at 1395. The Sixth Circuit held that this so-called disavowal did not undermine standing because the permit application form was written after initiation of the lawsuit and did not change the express terms of the law. *Id.* Here, in contrast, HHS has published an official notice in the Federal Register committing to nonenforcement until a new rule is promulgated, and HHS issued that notice years before this case was filed.

Plaintiff also alleges bad faith on the part of HHS in an attempt to undermine the Notice of Nonenforcement. Specifically, Plaintiff argues that "HHS cites the [N]otice [of Nonenforcement] because it wants to stave off challenges to the 2016 Grants Rule as long as possible, so that HHS may coerce compliance with this unlawful rule as much as possible." Opp. 24. Plaintiff's allegation that HHS is lying to this Court about the Notice of Nonenforcement is entirely unfounded. Even were this allegation included in Plaintiff's Complaint—which it is not, *see generally* Compl., ECF No. 1—such "vague and conclusory allegations of nefarious intent and motivation by officials at the highest levels of the federal government are not well-pleaded, and are therefore insufficient to 'plausibly suggest an entitlement to relief,'" *see Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 377 (6th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009)); *see also United States v. Martin*, 438 F.3d 621, 634 (6th Cir. 2006) (noting "the presumption of regularity that attaches to the acts of government officials" can only be overcome by "clear evidence" to the contrary). Regardless, it makes little sense for HHS to attempt to "coerce compliance," Opp. 24, with the 2016 Grants Rule by issuing a public disavowal of its

4

enforcement, especially in light of Plaintiff's admitted noncompliance with the 2016 Grants Rule, *see* Opp. 16.

Next, Plaintiff argues that both the withdrawal of blanket exemptions to the 2016 Grants Rule and "HHS['s] refus[al] to give Holston Home a religious exemption" evince a "complete[] revers[al]" of the Notice of Nonenforcement. Opp. 21. But Plaintiff ignores the express reasoning behind the withdrawals. As explained in Defendants' Motion to Dismiss, HHS withdrew the blanket exemptions granted to three States and certain child welfare organizations in part *because of* the Notice of Nonenforcement, which made those blanket waivers unnecessary. *See* Mem. 3–4, 8 (citing HHS, *HHS Takes Action to Prevent Discrimination and Strengthen Civil Rights* (Nov. 18, 2021) [hereinafter Withdrawal Letters], https://www.hhs.gov/about/news/2021/11/18/hhs-takes-action-to-prevent-discrimination-and-strengthen-civil-rights.html) (providing that HHS was withdrawing the exemptions to the 2016 Grants Rule as "inappropriate and unnecessary" because "the prior Administration did not enforce [the 2016 Grants Rule] . . . and instead issued a Notice of Nonenforcement"). Moreover, HHS merely withdrew blanket exemptions in lieu of considering case-by-case exemptions, as required under the Religious Freedom Restoration Act ("RFRA"). *See* Withdrawal Letters ("With today's actions, the Department is returning to its longstanding practice of a case-by-case evaluation of requests for religious exemptions, waivers and modifications of program requirements across its components, which is demanded by [RFRA]. . . . The Department will continue to evaluate RFRA and other religious conscience laws as these requests come forward."); *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 430 (2006) (explaining that RFRA requires individualized analysis of the particular requested

5

exemption). Plaintiff is no exception. Should HHS ever rescind the Notice of Nonenforcement, rendering exemptions once again appropriate, Plaintiff may apply to HHS for such an exemption.[1]

Accordingly, given the Notice of Nonenforcement, Plaintiff lacks standing and a ripe claim.

## II. Plaintiff Mischaracterizes Recent Events That Have No Effect on the Notice of Nonenforcement.

Plaintiff also mischaracterizes recent events in an attempt to minimize the significance of the Notice of Nonenforcement, including the January 20, 2021 Executive Order; the June 15, 2022 Executive Order; and the government's motion to vacate the 2021 Grants Rule in a separate litigation. But there has been no relevant change since HHS issued the Notice of Nonenforcement in 2019, and certainly not since Plaintiff commenced this lawsuit.[2]

Plaintiff's reliance on the January 20, 2021 Executive Order is misplaced. *See* Opp. 5, 13 (*citing* Executive Order 13,988, Preventing and Combating Discrimination on the Basis of Gender Identity or Sexual Orientation, 86 Fed. Reg. 7,023 (Jan. 20, 2021)). Contrary to Plaintiff's characterization of the January 20, 2021 Executive Order as "demanding full enforcement of provisions like the 2016 Grants Rule," *id.*, the January 20, 2021 Executive Order makes no reference to the 2016 Grants Rule and merely instructs agencies to "consider whether to revise, suspend, or rescind" existing regulations and "consider whether there are additional actions that the agency should take" to protect against sex discrimination. 86 Fed. Reg. at 7,023–24. The mere

---

[1] In the nearly three years between the date HHS published the final rule and when HHS published the Notice of Nonenforcement, Plaintiff never applied to HHS for an exemption (nor has it ever done so).

[2] Standing is analyzed at the time the lawsuit commences and not with regard to subsequent events. *See, e.g.*, *Ailor v. City of Maynardville, Tennessee*, 368 F.3d 587, 596 (6th Cir. 2004). Accordingly, because the June 15, 2022 Executive Order and the motion to vacate the 2021 Grants Rule occurred after Plaintiff filed its Complaint, Plaintiff cannot rely on these events to establish standing. Regardless, even were this Court to consider these events, Plaintiff still fails to establish standing for the reasons explained in Part II.

fact that the Executive Order directs agencies to find ways to prevent and combat sex discrimination says nothing about the status of this particular Notice of Nonenforcement.

Plaintiff's reliance on the June 15, 2022 Executive Order is unavailing for the same reasons. Plaintiff alleges that "President Biden ordered HHS to further strengthen its use of the 2016 Grants Rule" in the June 15, 2022 Executive Order. Opp. 7 (*citing* Executive Order 14,075, Advancing Equality for Lesbian, Gay, Bisexual, Transgender, Queer, and Intersex Individuals, 87 Fed. Reg. 37,189 (June 21, 2022)). In fact, the June 15, 2022 Executive Order—like the January 20, 2021 Executive Order—makes no reference to the 2016 Grants Rule. The Executive Order broadly concerns "the rights and safety of LGBTQI+ individuals" and merely encourages HHS to "use the Department's authorities to strengthen non-discrimination protections on the basis of sex, including sexual orientation, gender identity, and sex characteristics, in its programs and services." 87 Fed. Reg. at 37,189, 37,191. The statement does not order HHS to "strengthen its use of the 2016 Grants Rule." Opp. 7. Thus, nothing in either Executive Order alters HHS's commitment not to enforce the 2016 Grants Rule pending repromulgation of a new rule.

Plaintiff draws similarly misguided conclusions from the government's conduct in separate litigation related to the 2021 Grants Rule. *See Facing Foster Care in Alaska v. HHS*, No. 1:21-cv-00308 (D.D.C. Feb. 2, 2021). First, Plaintiff speculates that the government's stipulated and court-approved postponement of the effective date of the 2021 Grants Rule in response to litigation seeking its invalidation, *see Facing Foster Care in Alaska*, No. 1:21-cv-00308, ECF Nos. 17–18, 22–23, 29–30, 34, 36–40 (D.D.C.), was a direct reaction to the January 20, 2021 Executive Order, *see* Opp. 5, 13. Plaintiff provides no basis for this speculation. The government's actions in *Facing Foster Care in Alaska* provide their reasoning on their face, including a commitment to proper rulemaking procedure. Plaintiff cannot hunt for hidden motives. Second, Plaintiff similarly

7

provides no basis for its speculation that the government's more recent motion to vacate the 2021 Grants Rule, *see Facing Foster Care in Alaska*, No. 1:21-cv-00308, ECF No. 41 (D.D.C. June 17, 2022), will "dissolve[]" the Notice of Nonenforcement, Opp. 19. In reality, the motion to vacate will have no effect on the Notice of Nonenforcement.

To illustrate, on December 15, 2021, the government moved for voluntary remand without vacatur of the 2021 Grants Rule "because it wish[ed] to reconsider the 2021 Rule." *Facing Foster Care in Alaska*, No. 1:21-cv-00308, ECF No. 28 at 4 (D.D.C. Dec. 15, 2021). That motion noted that "[b]ecause the notice of non-enforcement remains in place, the non-discrimination protections in the 2016 [Grants] Rule would not be enforced even if the 2021 [Grants] Rule were vacated." *Id.* at 9. The Court held the case in abeyance and postponed the 2021 Grants Rule's effective date while the parties discussed next steps. *See Facing Foster Care in Alaska*, No. 1:21-cv-00308, ECF No. 30 (D.D.C. Dec. 27, 2021). Then, on June 17, 2022, the government moved for remand *with* vacatur after discovering "anomalies in the process through which the [2021 Grants Rule] was promulgated" such that "the challenged portions of the rule were not promulgated in compliance with the [APA]." *Facing Foster Care in Alaska*, No. 1:21-cv-00308, ECF No. 41 at 2 (D.D.C. June 17, 2022). The motion clarified that "vacating the 2021 [Grants] Rule's formal repeal of the 2016 [Grants] Rule will not cause disruption or change the status quo" because "the 2016 [Grants] Rule has never been enforced, and HHS has stated publicly that it will not enforce the 2016 [Grants] Rule pending promulgation of a new rule." *Id.* at 8–9.[3]

Thus, HHS moved to vacate the 2021 Grants Rule not based on vague policy declarations, but due to concern with the rulemaking process. Moreover, the motion to vacate will not

---

[3] The Court granted the government's motion to vacate on June 29, 2022. *See Facing Foster Care in Alaska*, No. 1:21-cv-00308, ECF No. 44 (D.D.C. June 29, 2022). As stated in the motion to vacate, the Notice of Nonenforcement remains in place.

8

"dissolve[]" the Notice of Nonenforcement, Opp. 10, or otherwise change the status quo for Plaintiff. The government's filings in *Facing Foster Care in Alaska*, including in the motion to vacate itself, all confirm as much. Nothing in the motion indicates a reversal of HHS's longstanding intent to promulgate a new rule to replace the 2016 Grants Rule. Nor does anything in the Notice of Nonenforcement premise nonenforcement of the 2016 Grants Rule on the promulgation of any particular new rule. Rather, the Notice of Nonenforcement disavows enforcement "pending repromulgation" generally. 84 Fed. Reg. at 63,811. In arguing to the contrary, Plaintiff appears to conflate the Notice of Nonenforcement with the concurrently published 2019 notice of proposed rulemaking, which culminated in the 2021 Grants Rule. 84 Fed. Reg. 63,831 (proposed Nov. 19, 2019). But the two are separate documents and have separate legal effects.

Finally, Plaintiff makes much of Defendants' alleged "refus[al] to disavow enforcement" of the 2016 Grants Rule. Opp. 19. But, as discussed above, the Notice of Nonenforcement expressly disavows enforcement. Plaintiff refers to an email exchange in May 2022, in which counsel for Plaintiff requested Defendants' position on "a stipulation enforceable by the court that HHS will not enforce the 2016 [Grants] [R]ule against Holston Home while the case is pending, in exchange for Holston Home's consent to [Defendants'] motion to stay." Ex. 1; *see also* Defs.' Mot. to Postpone Rule 26(f) Scheduling Conference and Related Deadlines, ECF No. 19. Defendants declined the offer, explaining that "[b]ecause Defendants' position is that the Court lacks jurisdiction over this case given the lack of any threatened injury, a stipulation to this effect would not be necessary or appropriate." Ex. 1. Defendants' refusal to voluntarily subject themselves to this Court's jurisdiction cannot establish a likelihood of enforcement in light of the Notice of Nonenforcement.

9

Accordingly, neither the executive orders, nor the motion to vacate the 2021 Grants Rule, nor Defendants' refusal to voluntarily subject themselves to this Court's jurisdiction establishes standing or ripeness.

## III. The Continuing Violations Doctrine Does Not Apply to Plaintiff's RFRA Claim.

Plaintiff does not dispute its failure to bring its RFRA claim within four years of when HHS promulgated the 2016 Grants Rule. Instead, Plaintiff cites a case from the Northern District of Texas for the proposition that its challenge survives under the continuing violation doctrine. Plaintiff argues that its ongoing injury "is living under the threat of future enforcement." Opp. 25. But "[a] continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation." *Cowell v. Palmer Twp.*, 263 F.3d 286, 293 (3d Cir. 2001) (quoting *Ocean Acres Ltd. v. Dare County Bd. of Health*, 707 F.2d 103, 106 (4th Cir. 1983)). Thus, "[t]he mere existence of [a policy] does not amount to a continuing violation." *Id.* Moreover, the Sixth Circuit has recognized that "[c]ourts have been extremely reluctant to apply this doctrine outside of the context of Title VII." *LRL Properties v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1105 n.3 (6th Cir. 1995). HHS has never enforced the 2016 Grants Rule and has instead issued a Notice of Nonenforcement. Plaintiff concedes that it has not altered, and does not intend to alter, its conduct in any way. Opp. 16. Accordingly, Plaintiff cannot establish a continuing violation based on a regulation that HHS has publicly declared it will not enforce.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiff's complaint for lack of subject matter jurisdiction under Rule 12(b)(1). In the alternative, the Court should dismiss Plaintiff's RFRA claim as time-barred and thus subject to dismissal for failure to state a claim upon which relief can be granted under Rule 12(b)(6).

Dated: June 29, 2022                    Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

MICHELLE R. BENNETT
Assistant Director
Federal Programs Branch

*/s/ Cassandra Snyder*
CASSANDRA SNYDER
D.C. Bar No. 1671667
Trial Attorney
Department of Justice
Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel: (202) 451-7729
Fax: (202) 616-8460
Email: cassandra.m.snyder@usdoj.gov


*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

      I hereby certify that on June 29, 2022, I electronically filed the foregoing paper with the Clerk of Court using this Court's CM/Doc. system, which will notify all counsel of record of such filing.

                                                 */s/ Cassandra Snyder*
                                                 CASSANDRA M. SNYDER
                                                 Trial Attorney